OPINION
{¶ 1} Defendant-appellant, Ricky J. Darthard, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery and felonious assault, with firearm specifications, as well as having a weapon while under disability. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On March 15, 2007, defendant was indicted on one count of aggravated robbery, a violation of R.C. 2911.01; two counts of robbery, violations of R.C. 2911.02; one count of felonious assault, a violation of R.C. 2903.11; and one count of having a weapon while under disability, a violation of R.C. 2923.13. Each of the first four counts in *Page 2 
the indictment contained a firearm specification. Defendant pled not guilty as charged. Prior to the commencement of trial, defendant waived his right to a jury trial as to the weapon under disability count. The case proceeded to trial in June 2007.
 {¶ 3} At the trial, Columbus Police Officer James Hassey testified as follows. In the early morning hours of September 22, 2006, Officer Hassey was dispatched to the area of Mound Street and Kimball Place due to a reported shooting. He encountered an abandoned truck or sport utility vehicle parked in the middle of the street. The passenger and driver's side doors were open. Two other police officers were already at the scene when Officer Hassey arrived. Officer Hassey helped secure the scene and make sure no one approached the truck because there was blood on the driver's side door. Later, Officer Hassey went to the emergency room at Grant Hospital to see Donald Preston, who was being treated for gunshot wounds. Based on his conversation with Preston, Officer Hassey obtained the name of defendant as a possible suspect.
 {¶ 4} Columbus Police Detective George Robey testified as follows. Early on September 22, 2006, Detective Robey went to the area of Mound Street and Kimball Place to investigate a possible robbery and/or shooting. Detective Robey arrived at the scene and saw a Chevrolet Avalanche parked on Mound Street. He took some photographs and instructed the officers to collect a shell casing that was found inside the vehicle. After the scene was processed, he went to Grant Hospital and interviewed Preston. Detective Robey noticed a strong smell of alcohol emanating from Preston's person, and he found it difficult to understand Preston because of his intoxication. About a week later, Detective Robey again interviewed Preston. Preston was more relaxed at the second interview, which occurred at his residence. At both interviews, Preston named *Page 3 
defendant as the shooter. Approximately an hour after his second interview with Preston, Detective Robey spoke with Justin Campbell in the area of Mound Street and Gilbert Street. Campbell was not very cooperative with the detective but did, using a nonverbal cue, identify defendant's picture in a photo array.
 {¶ 5} Campbell testified as follows. On the evening of September 21, 2006, Campbell and Preston went to a club. The two drank alcohol at the club and Preston became drunk. After leaving the club, the two drove to a "little bootleg joint" located near the intersection of Mound Street and Kimball Place. (Tr. 118.) Preston stopped the vehicle and vomited. The two got out of the vehicle and defendant "came out of nowhere * * * with a female companion." (Tr. 119.) Campbell and defendant argued and then Campbell, defendant, and Preston got into the vehicle. With defendant in the front passenger seat, Campbell in the backseat, and Preston driving, the three drove away. As they were driving, defendant was talking on his phone with someone. Preston stopped the vehicle. A black truck stopped in front of them and a heavyset man ran over and handed a pistol to defendant. Campbell saw defendant shoot Preston. Campbell exited the vehicle, ran, and heard another gunshot. The police arrived and Campbell decided to leave, despite being advised by the police that he needed to stay. Campbell was interviewed by the police a week after the incident.
 {¶ 6} Preston testified as follows. On the night at issue in this case, Preston and Campbell went to a night club and drank alcohol, and Preston got drunk. The two left the club and drove to Mound Street and Kimball Place for an "after party." (Tr. 151.) Preston stopped the vehicle and defendant approached the vehicle and started to talk with Preston. Defendant got into the vehicle and continued to talk with Preston. Defendant *Page 4 
asked Preston to take him around the corner and drop him off at a different location. Campbell, who had been out of the vehicle for a short period of time, got back into the vehicle. Preston drove around the block and a truck stopped in front of him. Preston told defendant to exit the vehicle, but he refused. Someone from the truck in front of Preston's vehicle approached the passenger side of the vehicle and handed defendant a gun. Defendant shot Preston in his right leg. Defendant grabbed the jewelry around Preston's neck and shot him again, this time in his left leg. Defendant fled in the truck that had previously blocked Preston's path. Preston was taken to Grant Hospital, where he was treated for his wounds and interviewed by the police. He was also interviewed by the police a week after the shooting.
 {¶ 7} At the conclusion of the trial, the jury found defendant guilty of committing aggravated robbery with a firearm specification and felonious assault with a firearm specification. The trial court found defendant guilty of having a weapon while under disability. The trial court sentenced defendant to ten years in prison for the offenses in this case.
 ¶ 8} Defendant appeals and sets forth the following single assignment of error for our review:
 THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING APPELLANT GUILTY OF AGGRAVATED ROBBERY AND FELONIOUS ASSAULT AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 5 
 {¶ 9} By his assignment of error, defendant argues that his convictions for aggravated robbery and felonious assault were not based on sufficient evidence and were against the manifest weight of the evidence.
 {¶ 10} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 11} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony. State v.Wright, Franklin App. No. 03AP-470, 2004-Ohio-677, at ¶ 11. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in *Page 6 
the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387, quoting Martin, supra, at 175.
 {¶ 12} Defendant challenges his aggravated robbery and felonious assault convictions. R.C. 2911.01 prohibits aggravated robbery and provides in part that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person * * * and * * * use it[.]" R.C. 2903.11 prohibits felonious assault and provides in part that "[n]o person shall knowingly * * * [c]ause * * * physical harm to another * * * by means of a deadly weapon[.]"
 {¶ 13} At trial, Preston testified that defendant shot him in the right leg, took his jewelry, and then shot him in the left leg. Campbell saw defendant shoot Preston once; after the first gunshot, he exited the vehicle and ran. Campbell heard the second gunshot as he was running away. This testimony provided sufficient evidence to convict defendant of aggravated robbery and felonious assault.
 {¶ 14} As to whether his convictions were against the manifest weight of the evidence, defendant argues that the testimonies of Campbell and Preston were contradictory and at times incredible. Defendant contends that Preston's testimony concerning defendant's acquisition of the gun immediately before the shooting was inconsistent with his statements to the police. Defendant additionally asserts that Campbell and Preston were not cooperative with the police investigation of the incident. These arguments are unavailing.
 {¶ 15} Defendant is correct that Campbell's testimony indicated that he did not fully cooperate with the police in regard to their investigation of the shooting. Testimony indicated that immediately after the shooting, the police instructed Campbell to stay in the *Page 7 
area, but he disobeyed the instruction and was not interviewed until a week later. Even when he was interviewed by Detective Robey, Campbell was not very cooperative.
 {¶ 16} Regarding Preston, defendant's trial counsel inquired into the issue of whether Preston told the police who he was with on the evening of the shooting. Specifically, defense counsel attempted to impeach Preston by asking him questions concerning who he was with on the evening of the shooting, including whether he told the police that he was with Campbell, who is apparently known as "Sticks." During that cross-examination, defense counsel suggested that Preston was evasive in identifying Campbell as the person he was with that night. Preston's testimony on the issue was equivocal.
 {¶ 17} Furthermore, defendant is correct that there was arguably inconsistent evidence regarding the source of the weapon used in the shooting. Campbell testified that a heavyset man handed the pistol to defendant before defendant shot Preston. Preston also testified that someone from the truck, which had stopped in front of his vehicle, had handed the gun to defendant. However, the preliminary police investigation report suggests that Preston told investigators that the weapon was on defendant's person before defendant brandished the weapon and shot him. Preston could not recall at trial whether he told the police that fact.
 {¶ 18} Even though there may have been some inconsistency in the evidence on particular issues, defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. See State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. Moreover, we find that the jury was not precluded from believing a witness simply because the witness may have been, to *Page 8 
some degree, uncooperative with the police. As in all cases, the determination of the credibility of the witnesses is primarily the responsibility of the trier of fact. See DeHass, supra. Based on our review of the evidence, we cannot conclude that the jury lost its way in finding defendant guilty of aggravated robbery and felonious assault.
 {¶ 19} Based on the foregoing, we overrule defendant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and SADLER, JJ., concur. *Page 1